Robert E. GREENE, Acting Regional Director of the First Region of the National Labor Relations Board, Petitioner,

v.

BUILDING & CONSTRUCTION TRADES COUNCIL OF THE BOSTON METROPOLITAN DISTRICT, AFL–CIO, and John E. Deady, Its Agent, Respondents.

Civ. A. No. 61–627–W.

United States District Court
D. Massachusetts.

Aug. 29, 1961.

Robert E. Greene, Boston, Mass., Stanley A. Mestel, N. L. R. B., Washington, D. C., for plaintiff.

Henry Wise, Boston, Mass., for defendants.

CAFFREY, District Judge.

1. This matter was heard upon a verified petition for a temporary injunction filed by Robert E. Greene, Acting Regional Director of the First Region of the National Labor Relations Board, pursuant to Section 10(*l*) of the National Labor Relations Act (29 U.S.C.A. § 160(*l*)). An Order to Show Cause was issued on August 14, 1961, returnable on August 22, 1961, at 10:00 A.M., and witnesses for petitioner and respondents testified on August 23, 1961. At the close of petitioner's evidence the respondents filed a motion to dismiss, upon which decision at that time was reserved, and thereafter respondents called one witness, John E. Deady. At the conclusion of all the evidence the matter was argued by counsel and both parties have filed memoranda of law.

2. Apartment Building Realty Trust (Trust) filed a charge with the Board on July 28, 1961 alleging that Building & Construction Trades Council

of the Boston Metropolitan District, AFL-CIO (Council), a labor organization, and John E. Deady, its agent, have engaged in and are engaging in unfair labor practices within the meaning of Section 8(b)(4)(i) and (ii), subparagraph (B) of the Act. Said charge was referred to petitioner as Acting Regional Director of the First Region of the Board.

3. Respondent Council is an unincorporated association in which employees participate and which exists for the purpose of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work, and maintains its principal office at Boston, Massachusetts. Respondent Deady has been its Secretary-Treasurer and General Agent at all material times.

4. Petitioner is Acting Regional Director, First Region, National Labor Relations Board. The petition was filed by him on behalf of the Board.

5. Trust, a so-called Massachusetts Trust, with its main office located in Somerville, Massachusetts, was, prior to July 20, 1961, and is now, engaged in the construction of garden-type apartment buildings in Brighton (Boston) Massachusetts.

6. This construction project will cost in excess of one million dollars and materials worth in excess of $500,000 will originate outside the Commonwealth of Massachusetts and be shipped in interstate commerce to Boston to be used in construction of the project.

7. Karnig S. Dinjian, one of the four trustees of Trust, who is an engineer by profession, operated, in effect, as the General Contractor for the project. In this capacity Mr. Dinjian, for the trustees, negotiated separate contracts with the various subcontractors necessary for the construction of the project.

8. Subcontractors William Canty, Fisher Electrical Company, D'Angelo Brothers, Mystic Valley Plumbing & Heating Company, Amato Tile Company, and William Ricardi are "non-union" sub-contractors; and subcontractors Colony Construction Company, Whittemore-Durgin Company, Boston Screen & Sash Company, and Boston Edison Company are "union" subcontractors. I find that all of the said subcontractors are persons engaged in commerce or in an industry affecting commerce.

9. Respondent Deady testified and I find that he first learned that this apartment project was to be constructed in the latter part of March 1961 and that he went to the job site approximately July 20,,1961 and that he learned from conference with Mr. Dinjian that the owners of the project were engaging both union and non-union subcontractors to perform various portions of the work to be done. Thereafter, on July 26, 1961, a meeting was held at Council's chambers, at which Mr. Deady and all four trustees of Trust were present.

10. The evidence is conflicting as to the nature of the discussion at these two meetings—the one between Mr. Dinjian and Mr. Deady and the other between all four trustees, Mr. Deady, and a person identified merely as "John." Mr. Dinjian testified that at the conversation at the job site on July 20, Mr. Deady told him that the procedure of using both union and non-union subcontractors could not go on and that Mr. Deady, in answer to his question as to what the trustees were to do about this situation, responded that they were to "get rid of" the non-union subcontractors. Mr. Dinjian likewise testified that Mr. Deady suggested that the trustees attempt to cause the non-union subcontractors to convert into union subcontractors by causing their employees to join an appropriate union. This conversation, as testified to by Mr. Dinjian, was substantially corroborated by the second witness for petitioner, one Allan R. Kingston. Mr. Deady, on the other hand, while confirming the time and place of the two meetings and the identity of those present, denied instructing the trustees to get rid of the non-union subcontractors and professed only his great concern for those employees of the non-union subcontractors who were

not receiving union wages. He did admit causing the picketing on the job site, saying that he did so for economic reasons for the prime purpose "of eliciting information which is not easily available to the public."

11. Pickets appeared at both entrances to the apartment project on July 25, 1961 and I find that the project has been picketed by representatives of the Building Trades Council from July 25, 1961 to date. When the pickets first appeared at the job site they carried signs reading, "This job unfair to AFL-CIO Building and Construction Trades. I find that after a few days the signs carried by the pickets were changed so as to read "Apartment Building Realty Trust in this job is unfair to AFL-CIO Building and Construction Trades."

12. On the basis of the foregoing I find that petitioner has reasonable cause to believe that at no time material to this case did respondents have any labor dispute with Trust, Colony, Whitimore, Screen, or Edison; that at all times material herein respondents did have a labor dispute with Canty, Fisher, D'Angelo, Mystic, Amato and Ricardi; and that in furtherance of the labor dispute with Canty, Fisher, D'Angelo, Mystic, Amato and Ricardi, respondents have since on or about July 25, 1961 picketed at the premises of the Trust apartment project at Brighton, Massachusetts.

13. I find that petitioner has reasonable cause to believe that after July 20 respondents threatened Trust that respondents would cause a strike by all union contractors working on the Trust apartment project unless all non-union subcontractors were removed and replaced by other subcontractors whose employees were members of labor organizations represented by respondent Council, and that respondents continued to picket the premises after an offer was made to withdraw all non-union subcontractors so as to leave only the masonry subcontractor, all of whose employees were union members, on the project; and that the picketing activities on this project have caused a total cessation of all work on the project, and that the pickets themselves stated that the reason for the picketing was "this is a Union job and the owners are using non-union subcontractors."

14. I find that petitioner has reasonable cause to believe that the pickets advised employees of the masonry subcontractor, who are members of a union affiliated with respondent Council, that if they (the employees of the masonry subcontractor) crossed the picket line they would be fined $100 and lose their union cards; that as a result of respondents' acts and conduct described above, employees of Colony, Whittemore, Screen and Edison ceased all work on the project and employees of certain suppliers have refused to make delivery of supplies and materials to the project site; and that respondents have engaged in and have induced and encouraged individuals employed by Colony, Whittemore, Screen and Edison, and by other persons engaged in commerce or in industries affecting commerce, to engage in strikes, or refusals in the course of their employment to use, process, transport, handle, or work on goods, articles, materials, or commodities, or to perform services, and have threatened, coerced, and restrained Trust, Colony, Whittemore, Screen and Edison, and other persons engaged in commerce or in industries affecting commerce.

15. I find that petitioner has reasonable cause to believe that the objects of the conduct described above were and are to coerce and require Trust and other persons to cease using, transporting, handling, or dealing in the products of and to cease doing business with Canty, Fisher, D'Angelo, Mystic, Amato and Ricardi; and to force and require Colony, Whittemore, Screen, and Edison to cease doing business with Trust in order to in turn force Trust to cease doing business with Canty, Fisher, D'Angelo, Mystic, Amato, and Ricardi; and that the conduct of respondents set forth above in connection with the operation of Trust, Canty, Fisher, D'Angelo, Mystic, Amato, Ricardi, Colony, Whittemore, Screen and

Edison has a close and substantial relation to commerce among the several states and tends to and does lead to labor disputes burdening and obstructing commerce, and it may fairly be anticipated that unless enjoined forthwith respondents will continue to repeat the acts and conduct set forth above.

16. With regard to respondents' motion to dismiss based on lack of jurisdiction, I rule that this Court as a United States District Court has jurisdiction of the instant proceeding pursuant to 29 U.S.C.A. § 160(l), and I rule that this Court is empowered to grant the petitioner herein injunctive relief.

17. There is and petitioner has reasonable cause to believe that:

(a) Respondent council is a labor organization within the meaning of Sections 2(5), 8(b) and 10(l) of the Act.

(b) Respondent Deady is an agent of respondent Council within the meaning of Sections 2(13), 8(b), and 10(l) of the Act.

(c) Trust is engaged in commerce within the meaning of Sections 2(6) and (7) of the Act.

(d) Canty, Fisher, D'Angelo, Mystic, Amato, Ricardi, Colony, Whittemore, Screen and Edison are engaged in commerce or in an industry affecting commerce.

(e) Respondents have engaged in unfair labor practices within the meaning of Section 8(b) (4) (i) and (ii), subparagraph (B) of the Act, affecting commerce within the meaning of Sections 2(6) and (7) of the Act, and a continuation of these practices will impair the policies of the Act as set forth in Section 1(b) thereof.

18. To preserve the issues for the orderly determination as provided in the Act, it is appropriate, just and proper that, pending the final disposition of the matters herein involved pending before the Board, respondents, their officers, representatives, agents, servants, employees, attorneys, and all members and persons acting in concert or participation with them, be enjoined and restrained from the commission, continuation, or repetition, of the acts and conduct set forth in paragraphs 11, 13, 14, and 15 above, acts or conduct in furtherance or support thereof, or like or related acts or conduct, the commission of which in the future is likely or may fairly be anticipated from respondents' acts and conduct in the past.

Respondents' motion to dismiss is denied.

The petition for a temporary injunction is allowed.